

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

*Travis Co,*

Board of Insurance Commissioners
Austin,
Texas

Gentlemen:

Attention: Mr. J. J. Timmins
Opinion No. O-2879
Re: Whether the state of facts
presented constitute a viola-
tion of Article 4875a-4,
Vernon's Civil Statutes.

We quote from your letter of October 31, requesting
an opinion of this department, as follows:

"Please advise this Department if the follow-
ing state of facts constitute a violation of said
Article 4875a-4,

"(1)  The Hanner Burial Association and
the Cass County Burial Associations, both li-
censed by the Board of Insurance Commissioners,
designate the same funeral home as the official
funeral home in the policies that they issue.
The name of the funeral home is Hanner Funeral
Home.  All of the affected entities are located
in Atlanta, Texas.

"(2)  The directors and officers of the
two burial associations are entirely different
persons.  There is, however, a family relation-
ship between the officers of the two associa-
tions.

"(3)  The cost of organizing the Cass County
Burial Association was in large part borne by the
Hanner Burial Association.

"(4)  The management of both associations
frankly admit that the purpose of having two
associations is to provide funeral benefits

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Board of Insurance Commissions, Page 2

greater in value than $150.00 (the legal limit on burial insurance). The management of the associations estimate that approximately 150 persons have policies in both associations and that such persons would be entitled to funeral benefits of a value greater than $150.00 through the official funeral home (Hanner Funeral Home)."

The above statute, which is set forth in your letter is found in Chapter 9A of Vernon's Civil Statutes, Article 4875a-4 and reads as follows:

"There shall be no connection between any two associations operating under this law and no one association shall contribute anything by way of salary or compensation to any executive officer for the purposes of such other association."

Section 23, Article 5068-1, Vernon's Civil Statutes, provides:

"Any individual, individuals, firms, co-partnerships, corporations or associations doing the business of providing burial or funeral benefits, which under any circumstances may be payable partly or wholly in merchandise or services, not in excess of One Hundred and Fifty ($150.00) Dollars, or the value thereof, are hereby declared to be burial companies, associations or societies, and shall organize under provisions of Chapter 274, Acts of the Forty-first Legislature, 1929, and amendments thereto; and shall operate under and be governed by Chapter 274, Acts of the Forty-first Legislature, 1929, and amendments thereto, and this Act. It shall be unlawful for any individual, individuals, firms, co-partnerships, corporations, or associations, other than those defined above, to engage in the business of providing burial or funeral benefits, which under any circumstances may be paid wholly or partly in merchandise or services."

By the preceding section of the above statute, being Section 23 of said Article, the exemption section of Chapter 274, Acts of the Forty-first Legislature, Section 29, is expressly repealed, bringing the organization and operation of burial associations, within the provisions of Chapter 9A, Vernon's Civil Statutes.

Board of Insurance Commissioners, Page 3

Article 4875a-22, found in Chapter 9A, Vernon's Civil Statutes, provides in part as follows:

"The Board shall not revoke the right of any association to do business in this State except upon the judgment of the Court of competent jurisdiction. . . ."

Section 27 of Article 4875a, supra, provides that any association that violates any of the terms of Chapter 274, (Chapter 9A, Vernon's Civil Statutes), shall in addition to other penalties imposed on it or on its members or officers, subject itself to forfeiture of its right to do business and to dissolution.

Section 13 of Article 5068-1, Vernon's Civil Statutes, expressly states that it is the primary purpose of the act to secure the members of the associations and their beneficiaries the full and prompt payment of all claims according to the maximum benefits provided in their certificates.

While the language of the particular statute involved is broad, we attribute to the Legislature an intent to use the word "connection" in a business sense without regard to that status created by blood ties or family relationships. In tracing the history of this statute, as it appears in a condensed form, the Legislature seems to have borrowed it from the language used at the time local mutual aid associations, particularly burial associations, were authorized as separate entities, regulated by the provisions of the law applicable to Fraternal Benefit Societies and at such time, frequently operated and controlled by other associations whose officers were outside the radius and territory of the local communities. We find that the Legislature, in order to better regulate such associations, in 1909 limited their operation to a certain local territory, and thus exempted them from the provisions of the general law then applicable, provided they are in "no manner, directly or indirectly, connected, federated or associated with any such association, and do not, directly or indirectly, contribute to the expense or support of any other such association, or to the officers, promoters or managers thereof.. . ." (See Article 4859, Revised Civil Statutes, prior to its appeal by Chapter 274, Forty-first Legislature, Acts 1929.)

According to your letter, the management or officers of both associations admit the purpose of having

Board of Insurance Commissioners, Page 4

two associations is to provide funeral benefits greater in value than $150.00. Whether or not this frank admission is to be construed as a working agreement or business connection between the two associations is in itself a question of fact. The thought occurs to us that the statements merely tend to assert the result effected as to the mutual policy holders of the two associations and if true, merely reflect that which would be perfectly obvious. The law does not restrict any given territory to the operation of one authorized burial association alone nor does it operate to prohibit the policy holder from becoming a member in more than one burial association operating in the same designated territory.

Policies or certificates issued by burial associations are required by Section 24, Article 5068-1, Vernon's Civil Statutes, to show on their face a schedule of certain stipulated merchandise and burial service which shall be approved by the Board of Insurance Commissioners as being of the reasonable value as stated in the policy, unless the insured shall at the time of its issuance elect to have same paid in cash. This election is customarily made in an application, a copy of which is required to be attached to and made a part of the policy contract. It is apparent that the Legislature did not intend to restrict the contract to any specific merchandise or character of service. We accept the proposition also that as between two associations, such scheduled merchandise and burial service will vary to some extent and in others be identical and similar. We merely make such observations as a preface to our conclusion that the fact of the existence of like contracts containing identical stipulated merchandise in the burial services, serviced by the same agency and whose officers are related by marriage or blood kin, such facts do not overcome the presumption that the associations so identified are complying with the provisions of the law in their operation.

The most serious question presented is in that contained in your paragraph No. 3 which states that the cost of organizing the Cass County Burial Association was in the large part borne by the Hanner Burial Association. That also is a fact question and while it raises a rather strong inference of Article 4875a-4 being violated, this fact goes mainly to the organization of the second association. We understand such costs were paid out of the expense fund and no facts refute such being characterized a bona fide loan.

You are therefore respectfully advised, that in the opinion of this department, such facts as presented in

Board of Insurance Commissioners, Page 5

your letter of October 31, are insufficient as a matter of law to charge the two associations named as being connected in their business operations in violation of Article 4875a-4, Vernon's Civil Statutes.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By      Wm. J. R. King
Assistant

WmJRK:eaw

APPROVED DEC 16, 1940

ATTORNEY GENERAL OF TEXAS


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN